# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | | |
|---|---|---|
| REBA JOHNSON, | : | |
| Plaintiff, | : | |
| | : | Case No. 3:21-cv-00995 |
| v. | : | |
| FLAGLER COUNTY SCHOOL DISTRICT, | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION

Flagler County School District has not provided Reba Johnson any educational services this school year. She has languished at home for months. To address that failure, Ms. Johnson entered a mediation agreement with the District under the Individuals with Disabilities Education Act (IDEA). The District agreed to provide Ms. Johnson services by the week of September 27, 2021, but it flouted the agreement, forcing Ms. Johnson to commence this enforcement action. She now seeks a preliminary injunction because without one, she will continue to languish at home while this case is litigated, suffering irreparable harm to her development and education. Ms. Johnson, who is 18-years-old and in tenth grade, is eligible for IDEA services for less than three more years. She does not have time to waste.

## BACKGROUND

Ms. Johnson lives in a behavioral group home in Flagler County. Johnson Declaration, Ex. A ¶ 7. She is a student with disabilities who is eligible for special-education services under the IDEA category emotional/behavioral disability. *Id.* ¶ 3. Ms. Johnson's disabilities impede her learning, and she requires a variety of academic and behavioral supports to make progress. *See* Reiter Declaration, Ex. B ¶¶ 12–14. Although she wants to attend school and learn, Ex. A ¶ 34, the District has prevented her from doing so this school year. *Id.* ¶¶ 19, 30–32; *see also* Ex. B ¶ 22.

Ms. Johnson moved to the District in November 2020, but the District did not begin to provide her services until January 2021. Ex. A ¶¶ 7–8; Ex. B ¶¶ 8–12. It provided her services only after staff at her group home had advocated on her behalf for weeks, repeatedly asking the District to start services. Ex. B ¶ 11. Then, a few months later, the District suspended Ms. Johnson and offered her only distance learning the remainder of the 2020-2021 school year. Ex. A ¶¶ 14–15; Ex. B ¶ 19.

In summer 2021, the District arranged for Ms. Johnson to attend an extended-school-year program at a public school, and with appropriate services, she successfully completed the program. Ex. A ¶ 16. But at the start of the 2021-2022 school year, the District again impeded Ms. Johnson's access to

2

an education, failing to comply with her Individualized Education Program (IEP) and provide her a placement at a public school with appropriate supports and services.[1] *Id.* ¶ 19; Ex. B ¶ 22.

In August 2021, Ms. Johnson filed an administrative complaint under the IDEA requesting mediation and a due process hearing to address the District's failures. Ex. A ¶ 20. The parties attended mediation on September 21, and after around ten hours of negotiation, they reached an agreement. *Id.* ¶¶ 21–24. They drafted and executed a mediation agreement pursuant to 20 U.S.C. § 1415(e). Mediation Agreement, Ex. C. Under Section 1415(e)(2)(F), the agreement "is enforceable in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(e)(2)(F).

The District agreed that, by the following week (the week of September 27), it would arrange for Ms. Johnson to start attending school again, provide her transportation to and from school, provide her a bus aide, place her in a self-contained classroom, afford her small group direct instruction in all academic areas, provide her para-professional support, and hold an IEP meeting to discuss her services and return to school. Ex. C at 1–2. The

---

[1] "The IEP is the centerpiece of the [IDEA]'s education delivery system for disabled children." *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017). An IEP is "a comprehensive plan" that sets forth the special-education services that a student needs to make progress. *Id.*

3

District's agreement to provide Ms. Johnson access to school by the week of September 27 was important to her; she was—and remains—eager to attend school. Ex. A ¶¶ 25, 34.

After the mediation, Ms. Johnson announced to all her peers and caregivers at her group home that she would soon be returning to school. Ex. B ¶ 25. She also planned her outfit for her first day and gathered school supplies. *Id.*

But the District failed to arrange for Ms. Johnson to attend school and receive services by the week of September 27. Ex. A ¶¶ 31–33; Ex. B ¶¶ 26, 31. During that week, Ms. Johnson contacted the District several times asking for her start date, but the District refused to provide one. Ex. A ¶ 26. She also tried to schedule an IEP meeting early in the week to discuss her return to school, but the District waited until Friday, October 1 to hold the meeting. *Id.* ¶¶ 27–28. Then, at the meeting, the District informed Ms. Johnson that it was not prepared to fulfill its obligations under the agreement, and it refused to provide her a start date. *Id.* ¶¶ 30–31; Ex. B ¶ 30. School staff reported that they had not even seen the agreement and that they were unaware that Ms. Johnson was supposed to start school by the week of September 27. Ex. B ¶¶ 30–32.

The District remains in violation of the agreement. Ex. A ¶¶ 30–33; Ex. B ¶ 31. Its disregard for its obligations under the agreement is harming Ms. Johnson, negatively impacting her educationally and emotionally and hindering her ability to gain transition skills that she needs to live independently as an adult. Ex. B ¶ 34–35. Each day, when the other children in Ms. Johnson's group home attend school, she is forced to stay behind, sitting idle while her brief window to obtain an education closes. Ex. A ¶ 33.

## LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## ARGUMENT

### I. Ms. Johnson is likely to succeed on the merits.

"This enforcement dispute is purely a matter of determining [the District's] obligation[s] under the" mediation agreement and whether it has fulfilled those obligations. *See H.C. ex rel. L.C. v. Colton-Pierrepont Cent. Sch. Dist.*, 341 F. App'x 687, 690 (2d Cir. 2009). That inquiry is straightforward. The District had an obligation to provide Ms. Johnson access to a classroom

and special-education services by the week of September 27, *see* Ex. C ¶¶ 1–2, but it did not provide—and still has not provided—her either one, Ex. A ¶¶ 31–32. The District has therefore violated the agreement, and Ms. Johnson is likely to succeed on the merits.

## II. Ms. Johnson will suffer irreparable harm absent a preliminary injunction.

The mediation agreement requires the District to, among other things, provide Ms. Johnson placement in a public school, transportation to and from school, small group direct instruction, and para-professional support. Ex. C ¶¶ 1–2. Absent a preliminary injunction requiring the District to comply with those obligations, Ms. Johnson will continue to have no school to attend, and she will lack access to special-education services. She will continue to sit at home without an education.

That will result in irreparable harm. The harm to Ms. Johnson from the District violating her IDEA mediation agreement and forcing her to sit at home without special-education services "cannot be undone through monetary remedies." *See Siegel v. LePore*, 234 F.3d 1163, 1191 n.4 (11th Cir. 2000). For starters, the IDEA does not permit monetary relief. *See Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313 (11th Cir. 2003) (the IDEA permits only injunctive and equitable relief); *Odebrecht Const., Inc. v. Sec'y,*

*Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013) (plaintiff faced irreparable harm because under applicable law, he had no "monetary recourse" against the defendant). But even if the IDEA allowed Ms. Johnson to obtain monetary relief, money cannot undo the ongoing damage she is suffering from being denied access to a classroom and special-education services. *See Ray v. Sch. Dist. of DeSoto Cty.*, 666 F. Supp. 1524, 1535 (M.D. Fla. 1987) ("This Court agrees and finds Plaintiffs have established irreparable injury arising from the continued denial of access to a classroom setting for the Ray boys."); *Paul Y. v. Singletary*, 979 F. Supp. 1422, 1427 (S.D. Fla. 1997) ("This Court also finds that irreparable injury will be and has been suffered, since Paul has been deprived of, and continues to be deprived of, the education he and his parents allegedly desire for him."); *Massey v. D.C.*, 400 F. Supp. 2d 66, 75 (D.D.C. 2005) (holding that a child with disabilities would suffer irreparable harm absent a preliminary injunction requiring the district to provide her a placement); *Lofton v. D.C.*, 7 F. Supp. 3d 117, 124 (D.D.C. 2013) (similar).

In *Lofton*, for example, the court granted a preliminary injunction requiring the district to reinstate the student in his private school so he could receive services required under the IDEA. 7 F. Supp. 3d at 124. The court concluded that the student would suffer irreparable harm without a

7

preliminary injunction because he had a "finite amount of time to receive educational services," and "[e]very week that [he] [wa]s not receiving . . . [them] [wa]s another week that [his] educational progress [wa]s delayed." *Id.* The district, the court went on, could not "retroactively cure the harm caused by those missed weeks of services." *Id.*

So too here. Ms. Johnson is eligible for special-education services for just a few more years. *See* 20 U.S.C. § 1412(a)(1)(A) (IDEA eligibility extends to age 21). Every day that she is denied access to a classroom and services strikes a blow to her educational progress and prospects of achieving "economic self-sufficiency" and "independent living." *See id.* § 1400(c)(1); Ex. B ¶ 35.

### III. The equities and the public interest favor a preliminary injunction.

These factors weigh heavily in favor of Ms. Johnson. First, the equities favor her because only she faces harm. *See Delta T, LLC v. Kale Fans Am. S.A. De C.V.*, 2020 WL 1674328, at *4 (M.D. Fla. Feb. 25, 2020) (equities favored the plaintiffs because the defendant faced no "legitimate hardship"). The District will not be harmed by a preliminary injunction requiring it to comply with an IDEA mediation agreement that it voluntarily entered just three weeks ago. *See Lofton*, 7 F. Supp. 3d at 125 ([T]he District's compliance with the

8

IDEA is not a harm, but rather is in its best interest, which also weighs in favor of issuing [a preliminary injunction]."). A school district cannot enter an agreement to resolve a student's IDEA claims, violate the agreement, and then seek to avoid its obligations less than a month later by claiming injury. If the District believed that for some reason it would be harmed by the terms of the mediation agreement, it should not have entered it.

Second, "the public has an interest" in upholding the rights of students with disabilities and in "school districts abiding by their agreements entered under 20 U.S.C. § 1415(e)." *Trost v. Dixon Unit Sch. Dist. 170*, 2021 WL 3666940, at *5 (N.D. Ill. Aug. 18, 2021) (granting preliminary injunction requiring the district to comply with the parties' mediation agreement). "Allowing a school district to enter an agreement to settle a[n] [educational] dispute, and then requiring the [child] to proceed to judgment on an action to enforce that agreement, while . . . the child is not [receiving the services in the agreement], could undermine the confidence of the public in the value of 20 U.S.C. § 1415(e) mediations." *Id.*

### IV. No bond is required under Rule 65(c).

"Rule 65(c) vests a district court with discretion in determining the amount and type of any security required." *Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres*, 910 F.3d 1130, 1172 (11th Cir. 2018). Here, there is no basis for

9

the Court to require a bond: Ms. Johnson is very likely to prevail on the merits, and even if she were not, the District will suffer no additional financial burden from providing her special-education services. It already has an obligation to do that under the IDEA, and it receives federal funding to help fulfill its obligation. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017) ("The IDEA offers federal funds to States in exchange for a commitment: to furnish [special-education services] to all children with certain physical or intellectual disabilities."); *Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510, 520 n.3 (E.D. Pa. 2014) (noting that states receive millions of dollars each "year in federal funding under the IDEA, the vast majority of which is distributed to" districts).

## CONCLUSION

Ms. Johnson has demonstrated all four requirements for a preliminary injunction. The Court should issue an injunction requiring the District to comply with the mediation agreement, including immediately providing her a placement in a self-contained classroom and affording her the agreed-upon special-education services.

Respectfully submitted,

*/s/ Kevin A. Golembiewski*
Kevin A. Golembiewski
Fla. Bar. No. 1002339
Gina Fabiano
Fla. Bar. No. 23420
Jatinique Randle
Fla. Bar. No. 0125283
Disability Rights Florida
1000 N. Ashley Drive
Tampa, FL 33602
850-488-9071 ext. 9735
keving@disabilityrightsflorida.org

*Counsel for Plaintiff*

Dated: October 13, 2021

## **CERTIFICATE OF SERVICE**

I, Kevin Golembiewski, do hereby certify that a true and correct copy of the foregoing will be served upon Defendant along with a true and correct copy of the corresponding Complaint and Summons.

Dated: October 13, 2021

/s/ *Kevin A. Golembiewski*
Kevin A. Golembiewski
Disability Rights Florida
1000 N. Ashley Drive
Tampa, FL 33602
