UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| REBA JOHNSON, | : |
| Plaintiff, | : |
| | : Case No. 3:21-cv-00995 |
| v. | : |
| FLAGLER COUNTY SCHOOL DISTRICT, | : |
| Defendant. | : |

**PLAINTIFF'S REPLY IN SUPPORT OF HER EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION**

This case is not about what services Ms. Johnson needs to receive an appropriate education. This is not a dispute over whether the District has provided her a free appropriate public education (FAPE) in accordance with 20 U.S.C. § 1412(a)(1)(A). It is an action to enforce a legally binding mediation agreement under 20 U.S.C. § 1415(e). The District must provide the special-education services in the agreement because it agreed to do so, not because of its duty to provide FAPE.

Thus, the District's arguments based on FAPE are a red herring. So too are its statements about Ms. Johnson's parents, its speculation about why she was put in foster care a decade ago, and its hearsay-based accusations about her behavior before arriving in the District. Other statements are simply inaccurate. For instance, the District asserts that Ms. Johnson's underlying due process complaint is currently pending, but that is not true. Ex. A ¶¶ 5–6. She has no case pending with the Florida

Division of Administrative Hearings. *Id.*; *see also* Ex. B (email from clerk stating that Ms. Johnson's due-process counsel has no pending cases).

The question presented at this stage is straightforward: whether Ms. Johnson is entitled to a preliminary injunction requiring the District to do what it agreed to do a month ago. She is. The District does not dispute that it is violating the agreement, and thus the IDEA. Nor does it dispute that with the supports in the agreement (direct small-group instruction and a paraprofessional), Ms. Johnson can successfully attend school. Instead, the District asserts that an injunction is not in the public interest because a staff shortage prevents it from providing the supports and without them, Ms. Johnson poses a safety risk. That argument is specious. It assumes that if this Court issues an injunction, the District will defy it rather than reallocating its resources to comply. What is more, the District knew about its shortage and Ms. Johnson's behavioral needs when it entered the agreement. It is a stunning about-face for it to now claim that for those very reasons the agreement is against the public interest.

Ms. Johnson does not pose a safety risk, and she is certainly not so much of a threat that she should be excluded from school indefinitely. Doc. 12 at 13 (asking the Court to "delay" the agreement indefinitely). She is "respectful," "caring," and "highly motivated to accomplish her behavioral goals." Ex. C ¶ 10; Ex. D ¶ 11. She has been repeatedly traumatized but has nevertheless continued to overcome obstacles. When she first moved to the District in late 2020, she struggled. She was in the

process of transitioning from a residential facility to community-based living—a transition that children often have difficulty with. Ex. D ¶¶ 7–8. On top of that, the District provided her limited behavioral supports. *See* Doc. 6-4 ¶ 14. But just a few months later, during summer 2021, she excelled in the District's extended-school-year (ESY) program. Her teacher raved about her, reporting: "Reba . . . has been an amazing asset to have in the classroom. She has been encouraging her peers and helping them through their work. . . . I have not yet seen a single behavior this summer. I am super proud of her." Ex. C at 5; *see also* Ex. E at 2.

## ARGUMENT

The District raises three arguments in its response: (1) that Ms. Johnson is not likely to succeed in this action because she did not exhaust administrative remedies, Doc. 12 at 11; (2) that she can receive "compensatory education hours," so the harm she is suffering is not irreparable, *id.* at 10; and (3) that the District should receive a pass on complying with the agreement because of a staff shortage that it was aware of at the time it entered the agreement, *id.* All three arguments are unavailing.

**1.** The District does not argue that Ms. Johnson's enforcement claim lacks merit. Instead, it asserts that she is not likely to succeed because she did not litigate a due process hearing before filing a federal complaint. *Id.* at 11. That administrative-exhaustion argument is based on the District's misunderstanding of the nature of this action. According to the District, Ms. Johnson had to litigate a due process hearing because she is "seeking relief for the denial of a free appropriate

3

public education." *Id.* at 12. But this is not a FAPE dispute: again, Ms. Johnson does not seek relief for a denial of FAPE; she seeks relief for a violation of a mediation agreement. Doc. 1 at 10 (alleging a violation of Section 1415(e), not of FAPE).

The IDEA's text and case law make clear that a child can commence an enforcement action in federal court without first litigating a due process hearing.

First, the text. Section 1415(e) states: "In the case that a resolution is reached to resolve the complaint through the mediation process, the parties shall execute a legally binding agreement that . . . (iii) is enforceable in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(e)(2)(F). That text says—without qualification—that mediation agreements are enforceable in district court; it does not say that they are enforceable only after a child has pursued a due process hearing. Indeed, Section 1415(e) does not even identify a due process hearing as a proper forum for an enforcement action. *H.C. v. Colton-Pierrepont Cent. Sch. Dist.*, 341 F. App'x 687, 690 (2d Cir. 2009) (holding that "a due process hearing . . . [i]s not the proper vehicle to enforce [a] settlement agreement"). The text of Section 1415(e) thus stands in stark contrast to the text of Section 1415(f), which sets forth the procedures for litigating a FAPE dispute. Section 1415(f) requires a child to be "aggrieved by the findings" of a hearing officer before filing in federal court. 20 U.S.C. § 1415(f)(2)(F). Section 1415(e) has no such requirement.

Congress' decision to require exhaustion for FAPE disputes but not enforcement actions makes good sense. An "enforcement dispute is purely a matter

4

of determining [a school district]'s obligation under [a] settlement agreement." *H.C.*, 341 F. App'x at 690. "It does not concern the identification, evaluation, or educational placement of the child, or the provision of [FAPE] to such child." *Id.* "As such, resolution of the dispute will not benefit from the discretion and educational expertise of state and local agencies, or the full exploration of technical educational issues related to the administration of the IDEA." *Id.*

Second, the case law. Consistent with the text of the IDEA, the vast majority of courts that have considered this issue have held that a child need not exhaust administrative remedies before commencing an enforcement action in federal court. *See, e.g.*, *id.* ("Congress has expressly provided for enforcement of IDEA [mediation] agreements in federal district courts."); *F.H. v. Memphis City Sch.*, 764 F.3d 638, 645 (6th Cir. 2014) ("[An IDEA] breach of contract claim does not require administrative exhaustion."); *Parker v. W. Carroll Sch. Dist.*, 2021 WL 2910207, at *5 n.8 (W.D. Tenn. May 27, 2021) ("The IDEA carves out a narrow exception to the exhaustion requirement for a plaintiff who engaged in a successful mediation session."); *Trost v. Dixon Unit Sch. Dist. 170*, 2021 WL 3666940, at *1 (N.D. Ill. Aug. 18, 2021) (granting preliminary injunction without requiring exhaustion).

That case law is correct. No different than other civil rights plaintiffs who have entered a settlement agreement, a child with disabilities does not have to exhaust administrative remedies before bringing an enforcement action. *See Eatmon v.*

5

*Bristol Steel & Iron Works*, 769 F.2d 1503, 1509 (11th Cir. 1985) ("Administrative remedies need not be exhausted" when a Title VII agreement is breached).

**2.** The District is incorrect that compensatory education hours will remedy the harm that Ms. Johnson is suffering. Because of the District's failure to provide her access to school pursuant to the mediation agreement, she is suffering two types of injury—both of which are irreparable.

First, she is suffering a loss of educational opportunity, and injuries that "are in the form of lost opportunities" constitute irreparable harm because they "are difficult, if not impossible, to quantify." *See MacGinnitie v. Hobbs Grp.*, 420 F.3d 1234, 1242 (11th Cir. 2005) (loss of business opportunities is irreparable harm). There is no way to measure how sitting at home without access to a classroom will impact Ms. Johnson's academic, social, and behavioral development.[1] Just as there is no way to measure the loss of "potential growth" in a business when a person is denied business opportunities, there is no way to measure the loss of "potential growth" in math, reading, and writing when a student is denied educational opportunities. *Cf. Advantus v. T2 Int'l*, 2013 WL 12122313, at *11 (M.D. Fla. May 30, 2013) (Howard, J.) (citing *Celsis v. CellzDirect*, 664 F.3d 922 (Fed. Cir. 2012)).

---

[1] The District states that Ms. Johnson "is attending school within the District." Doc. 12 at 10. That is inaccurate. She remains home. Doc. 6-3 ¶¶ 32–34. Before the parties entered the mediation agreement, Ms. Johnson had no educational placement. She entered the agreement to rectify that. Because the District has not complied with the agreement, she remains without a placement.

For that reason, the availability of compensatory education does not make Ms. Johnson's injury reparable. As the District Court for the Northern District of New York put it, "compensatory education cannot replace that which a student was entitled to receive in earlier life" because "education is an on-going continuum which, when broken through interruption, can cause significant setbacks." *Cosgrove v. Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 393 (N.D.N.Y. 2001). Compensatory education, in other words, may be "a start" for remedying a denial of services, but it cannot make a child whole for lost opportunities during an earlier, more critical developmental stage. *See id.*

Second, Ms. Johnson is suffering emotional injury, which is irreparable because she has "no adequate remedy at law." *See Reynolds v. Roberts*, 207 F.3d 1288, 1299 (11th Cir. 2000) ("A court enters a preliminary injunction to prevent the plaintiff from being injured, and where there is no adequate remedy at law."). The District's ongoing failure to provide her access to school has led to her feeling "extreme[] disappoint[ment]" and "rejection." Doc. 6-4 ¶¶ 32–35. She is a pariah in her group home, forced to stay behind while her peers attend school each day. Doc. 6-3 ¶ 33. That emotional injury cannot be remedied at the end of this case because Ms. Johnson cannot obtain compensatory damages for it under the IDEA.[2]

---

[2] Nor can she obtain compensatory damages for it under Florida contract law. *See Floyd v. Video Barn*, 538 So. 2d 1322, 1325 (Fla. 1st DCA 1989) ("[W]here the gravamen of the proceeding is breach of contract, even if such breach be willful and flagrant, there can be no recovery for mental pain and anguish.").

*Keirnan v. Utah Transit Authority* is instructive. 339 F.3d 1217 (10th Cir. 2003). There, the plaintiff challenged a transit system's wheelchair policy under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. *Id.* at 1219. Like Ms. Johnson, the plaintiff sought a preliminary injunction, asserting that she was suffering irreparable non-economic injury (her injuries included, among other things, "los[s] [of] the ability to attend religious services"). *Id.* at 1220. The Tenth Circuit held that the injury was indeed irreparable because the plaintiff could not obtain damages under the ADA and Section 504. *Id.*; *see also Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1307 (M.D. Fla. 2010) (Howard, J.) (segregating plaintiff from the community irreparably harmed her "health and well being")

**3.** Finally, the District's public-interest argument is built on a dubious premise: that the District will defy a court order. The District asserts that without the supports in the agreement, Ms. Johnson poses a safety risk and that it cannot provide the supports due to a staff shortage. But if this Court issues an injunction, the District will prioritize its resources to provide Ms. Johnson the supports.[3]

Indeed, the District's argument at best is disingenuous and at worst admits malfeasance. When the District entered the agreement in September, it was aware of its staff shortage and Ms. Johnson's needs. Doc. 13 at 4 (the District has had the shortage since at least August); *id.* at 2 (the District has known about Ms. Johnson's

---

[3] And Ms. Johnson will then have access to supports that are similar to those she received during her ESY program, which she excelled in. *See* Doc. 1-3 at 1.

8

needs since she transferred). If those things indeed made the agreement untenable, the District would not have entered it. But if that is not so, the District committed malfeasance, and its position here is breathtaking. It asks this Court to (1) hold that it knowingly entered an agreement that it did not believe was in the public interest, and (2) bless such malfeasance by awarding it a windfall—by allowing it to avoid litigating Ms. Johnson's due process claims *and* escape its duties under her agreement. Condoning such a ploy is not in the public interest.

Nor is the COVID-19 pandemic a basis for absolving the District of its duties under the IDEA. In suggesting otherwise, the District asks this Court to act as the legislature. Congress has the power to waive school districts' duties under the IDEA if there is a national emergency, but it has declined to exercise that power during the pandemic. *See DeVos Declines to Seek Congressional Waivers to FAPE, LRE Requirements of IDEA*, U.S. Dep't of Educ.: https://sites.ed.gov/idea/secretary-devos-declines-to-seek-congressional-fape-lre-waivers-to-idea-requirements. The Court should reject the District's invitation to step into Congress' shoes and provide the District a de facto waiver of its IDEA duties here.

The Court should also reject the District's suggestion that Ms. Johnson is dangerous. Its own actions belie that claim. First, it suspended her for just three days for the spring 2021 incident, undercutting its claim that the incident establishes dangerousness. Doc. 6-4 ¶ 14. Second, after the incident, it let her attend its in-person ESY program. Third, it has never invoked the procedures under Florida law

9

for addressing students who pose a safety risk; it has neither performed a threat assessment under Fla. Stat. § 1006.07(7) nor invoked Fla. Admin. Code r. 6A-6.03312(6), which allows districts to remove a child from school if she poses a threat.

In short, the public interest does not militate against an injunction; it heavily favors one. Doc. 6-1 at 9. Ordering the District to comply with the agreement will not risk harm to others, but it will advance the public's strong interest in (1) districts complying with their agreements, *Don King Prods. v. Mosley*, 2015 WL 11198251, at *12 (S.D. Fla. Aug. 25, 2015) ("[T]he public interest is always served by the enforcement of valid contracts."); *Trost*, 2021 WL 3666940, at *5 ("[T]he public has an interest in school districts abiding by their agreements."), and (2) Ms. Johnson accessing an education, *see* 20 U.S.C. § 1400(c)(1) ("Improving educational results for children with disabilities is an essential element of our national policy of ensuring . . . self-sufficiency for [them]."); *Worthington City Sch. Dist. v. Moore*, 2020 WL 4000979, at *7 (S.D. Ohio July 15, 2020) ("[T]he public has a strong interest in ensuring students with disabilities have access to education.").

## CONCLUSION

The District should do what it agreed to do. Otherwise, Ms. Johnson will keep suffering irreparable harm. A preliminary injunction is warranted, and no bond is required.[4]

---

[4] For the same reasons set forth herein, Ms. Johnson opposes the District's motion to dismiss. She will respond to the motion within 21 days. *See* L.R. 3.01(c).

Respectfully submitted,

*/s/ Kevin A. Golembiewski*
Kevin A. Golembiewski
Fla. Bar. No. 1002339
Gina Fabiano
Fla. Bar. No. 23420
Jatinique Randle
Fla. Bar. No. 0125283
Disability Rights Florida
1000 N. Ashley Drive
Tampa, FL 33602
850-488-9071 ext. 9735
keving@disabilityrightsflorida.org

*Counsel for Plaintiff*

Dated: October 26, 2021

## **CERTIFICATE OF SERVICE**

I, Kevin Golembiewski, do hereby certify that a true and correct copy of the foregoing was served on all counsel of record via e-filing.

Dated: October 26, 2021

/s/ *Kevin A. Golembiewski*
Kevin A. Golembiewski
Disability Rights Florida
1000 N. Ashley Drive
Tampa, FL 33602
