United States District Court
Middle District of Florida
Jacksonville Division

REBA JOHNSON,

       *Plaintiff,*

V.                         **NO. 3:21-cv-995-MMH-PDB**

FLAGLER COUNTY SCHOOL DISTRICT,

       *Defendant.*

---

## Report & Recommendation

Reba Johnson sued Flagler County School District to enforce an agreement reached through mediation conducted under § 615 of the Individuals with Disabilities Education Act (IDEA), as codified and amended at 20 U.S.C. § 1415 and referred to here as § 1415. *See* Docs. 1 (complaint), 1-3 (agreement). This Court entered a consent decree, reserving jurisdiction to enforce the decree's terms. Doc. 26.

Now proceeding under Federal Rule of Civil Procedure 54(d) and Local Rule 7.01 and relying on the IDEA, Ms. Johnson requests a determination she is entitled to an award of reasonable attorney's fees and expenses incurred in prosecuting this lawsuit. Doc. 29. The school district opposes the motion. Doc. 31. The threshold issue of whether the IDEA authorizes a fee award to the prevailing party in a lawsuit to enforce an agreement reached through IDEA mediation appears to be an issue of first impression in this circuit.

## I.    Background

According to Congress, these are the purposes of the IDEA:

(1) (A) to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living;

(B) to ensure that the rights of children with disabilities and parents of such children are protected; and

(C) to assist States, localities, educational service agencies, and Federal agencies to provide for the education of all children with disabilities;

(2) to assist States in the implementation of a statewide, comprehensive, coordinated, multidisciplinary, interagency system of early intervention services for infants and toddlers with disabilities and their families;

(3) to ensure that educators and parents have the necessary tools to improve educational results for children with disabilities by supporting system improvement activities; coordinated research and personnel preparation; coordinated technical assistance, dissemination, and support; and technology development and media services; and

(4) to assess, and ensure the effectiveness of, efforts to educate children with disabilities.

20 U.S.C. § 1400(d).

To achieve these purposes, the IDEA offers states federal funds in exchange for complying with certain statutory conditions. *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017). One condition is to provide a "free appropriate public education," known as a "FAPE," to all "children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." § 1412(a)(1)(A).

2

A FAPE includes "special education and related services." § 1401(9). A state receiving funding must provide a disabled child special education and related services "in conformity with the individual education program," known as an "IEP." § 1401(9)(D). An IEP is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance" with statutory criteria. § 1401(14). An IEP is prepared by an "IEP Team," which includes teachers, representatives of the local educational agency, and parents. § 1414(d)(1)(B). Individualized for each child's unique needs, the IEP is the "centerpiece" of the IDEA's "education delivery system for disabled children." *Endrew*, 137 S. Ct. at 994 (internal quotation marks and quoted authority omitted).

When disagreement about an IEP arises, a parent "may turn to dispute resolution procedures" in § 1415. *Id.* Under that part of the IDEA, a parent may present a complaint about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." § 1415(b)(6)(A). A complaint generally leads to a "preliminary meeting" of the parties. § 1415(f)(1)(B)(i). Instead of, or in addition to, the preliminary meeting, the parties may elect to participate in mediation. § 1415(e). If the parties settle at the meeting or mediation, they must sign a written agreement. § 1415(e)(2)(F), (f)(1)(B)(iii). If the parties fail to settle, they proceed to a "due process hearing" before a local or state educational agency,[1]

---

[1] A "local educational agency" is "a public board of education or other public authority legally constituted within a state for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools." § 1401(19)(A). A "state educational agency" is "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools, or,

§ 1415(f)(1)(A), with a right to appeal to a state educational agency if the due process hearing is before a local educational agency, § 1415(g)(1). At the end of the administrative process, the losing party can sue in federal court. § 1415(i)(2)(A).

The Supreme Court has summarized these IDEA procedures:

> Because parents and school representatives sometimes cannot agree on … issues, the IDEA establishes formal procedures for resolving disputes. To begin, a dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides). *See* § 1415(b)(6). That pleading generally triggers a "[p]reliminary meeting" involving the contending parties, § 1415(f)(1)(B)(i); at their option, the parties may instead (or also) pursue a full-fledged mediation process, *see* § 1415(e). Assuming their impasse continues, the matter proceeds to a "due process hearing" before an impartial hearing officer. § 1415(f)(1)(A); *see* § 1415(f)(3)(A)(i). Any decision of the officer granting substantive relief must be "based on a determination of whether the child received a [FAPE]." § 1415(f)(3)(E)(i). If the hearing is initially conducted at the local level, the ruling is appealable to the state agency. *See* § 1415(g). Finally, a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court. *See* § 1415(i)(2)(A).

*Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 749 (2017) (alterations in original).

According to allegations in the complaint filed in this lawsuit, Ms. Johnson, now 18 or older, has post-traumatic stress disorder, disruptive mood dysregulation disorder, and attention deficit hyperactivity disorder. Doc. 1 ¶¶ 11, 25. She moved to a group home in the school district in November 2020. Doc. 1 ¶¶ 26–28.

---

if there is no such officer or agency, an officer or agency designated by the Governor or by State law." § 1401(32).

The parties agree that, following the IDEA procedures in § 1415, Ms. Johnson filed a due process complaint, the parties participated in mediation, and the mediation resulted in a written agreement signed by Ms. Johnson and a school district representative on September 21, 2021. *See* Docs. 1-2 (Ms. Johnson's due process complaint), 1-3 (the agreement).

In the agreement, the school district denied liability. Doc. 1-3 at 2. The school district explained it "enters into this agreement as a matter of compromise to avoid the expense and risk of litigation and no other intention should be inferred." Doc. 1-3 at 2. The parties agreed the school district will provide these services to Ms. Johnson:

> 1. [Ms.] Johnson will be provided small group direct instruction in all academic areas by certified general education and ESE certified teachers at Flagler Palm Coast High School (FPC). The instruction will take place in a self[]-contained classroom to assist in dealing with certain social issues, behavioral concerns, and specific academic struggles (i.e. in math, reading, science) this will begin the week of September 27th, 2021. Lauren Green will be consulted in the development of the small group direct instruction. This will be an interim placement for 90 days but not to exceed 9 weeks for the purpose of diagnostics and the development of a permanent education program.
>
> [2.] During the 90 days the district will retain independent consultants not affiliated with Flagler County School District (FCSD), such as University of South Florida's Project 10. These Independent consultants will work collaboratively with Disability Rights Florida's (DRF) independent consultants and the FCSD to assess the interim placement identify and develop an appropriate permanent educational program. The consultants will meet with the IEP team to discuss those recommendations[.]
>
> 3. The [school district] agrees to provide an [Independent Educational Evaluation] for a psycho-educational and speech Language evaluations. [Ms. Johnson] and her representatives wish to use Dr. Kahina Louis to complete the psycho-educational evaluation. DRF will select an [Independent Educational Evaluation] provider to conduct the Speech

and Language evaluation and inform FCSD of the provider as soon as practicable.

4. The [school] district will start a Functional Behavioral Assessment (FBA) of [Ms.] Johnson within two weeks after she has been in attendance and can be evaluated within the FPC classroom setting.

5. Upon completion of the FBA, an IEP meeting will be convened immediately, no later than October 28, 2021, to review the FBA and develop a positive behavioral intervention plan (PBIP).

6. An interim IEP meeting will be scheduled during the week of September 27th, 2021 to change students' placement, assigned school, and document the additional services.

7. [Ms.] Johnson will be provided Transportation to and from school with a Special Education Bus beginning the week of September 27th, 2021 that includes a bus aide.

8. The parties agree that FCSD shall provide compensatory education hours. The parties will convene by January l, 2022, to determine the number of hours and services to be provided.

9. FCSD will conduct a transition assessment within the first two weeks of attending FPC. The types of transition services to [] be provided to [Ms. Johnson] will be addressed at the IEP meeting being convened to discuss the results of the assessment and FBA. FCSD will initiate a referral to Vocational Rehabilitation (VR).

10. [Ms.] Johnson will be provided a Para Professional support [sic] in her class[]room beginning the week of September 27th, 2021.

11. [Ms.] Johnson will be provided an ESY Supplement – Extended school year (ESY) services relating to services that are provided to her in accordance with her IEP to be determined at a future IEP meeting during the 2021-2022 school year.

12. [The school district] will provide Counseling Services for [Ms. Johnson] beginning the week of September 27th, 2021.

Doc. 1-3 at 1–2 (underlining omitted). The parties agreed the services "may exceed the requirements of the IDEA including the requirements to provide a

[FAPE]." Doc. 1-3 at 2. The parties further agreed the agreement "shall be governed by the IDEA and the laws of the State of Florida." Doc. 1-3 at 2.

According to Ms. Johnson, the school district failed to provide the agreed-to services by the week of September 27, 2021, and, at the agreed-to IEP meeting held on October 1, 2021, failed to provide a new deadline to begin providing the services. Doc. 1 ¶¶ 52–65.

Within a week of that meeting, Ms. Johnson filed this lawsuit, asserting two claims for relief. Doc. 1. For "Count I: Violation of IDEA Mediation Agreement," she alleged the parties signed an agreement through IDEA mediation, the school district violated the agreement by failing to provide the agreed-to services, and the violations are irreparably harming her. Doc. 1 ¶¶ 74–86. For "Count II: Breach of Contract Under Florida Law," she alleged the agreement is a contract under Florida law, the school district materially breached the contract by failing to provide the agreed-to services, and the breaches are irreparably harming her. Doc. 1 ¶¶ 87–98.

Ms. Johnson requested the same relief for both counts: preliminary and permanent injunctive relief requiring the school district to fulfill its obligations under the agreement, equitable relief "such as compensatory-education services," declaratory relief (she provides no description of the requested declaration), "[r]easonable attorney fees and litigation costs incurred in prosecuting this action," and any other relief the Court considers appropriate. Doc. 1 at 13.

The school district moved to dismiss the complaint, arguing Ms. Johnson failed to exhaust IDEA administrative remedies and, in alleging irreparable harm, provided only labels and conclusions. *See generally* Doc. 12.

Ms. Johnson separately moved for a preliminary injunction. Doc. 6. The Court conducted a hearing on that motion. Docs. 18, 19. On the record, the Court denied the motion to dismiss and determined an evidentiary hearing was required to assess Ms. Johnson's position that the school district's failure to provide the agreed-to services is irreparably harming her and the school district's position that Ms. Johnson's battery of a teacher complicated matters, the pandemic and labor shortages made finding paraprofessional support and performance of the agreed-to services impossible, and shifting resources was not a viable option. *See generally* Doc. 19. Without objection, the Court decided the evidentiary hearing would be combined with trial on the merits. Doc. 19 at 49–53.

At the hearing, the Court stated, "[I]t's not clear to me whether you're simply seeking to enforce the mediated settlement agreement, but doing so under the IDEA's statutory provision, or whether you're seeking affirmative relief under the statute." Doc. 19 at 11–12. Ms. Johnson's counsel responded, "It's just an enforcement action. So it's a contract dispute under the IDEA that's been federalized by [§] 1415(e), and so all we're seeking at this stage of the preliminary injunction is to enforce that mediation agreement pursuant to the IDEA." Doc. 19 at 12. He added, "We're not seeking any kind of affirmative-based relief, [FAPE] relief. We just want the district to do what it agreed to do on September 21st." Doc. 19 at 12.

After the school district answered the complaint and the parties exchanged some discovery, the parties successfully negotiated a resolution. Doc. 22 ¶¶ 5–8. They asked the Court to enter the consent decree "as an order of the Court to resolve this action," explaining the decree is "designed to remedy the violations of the IDEA alleged by Ms. Johnson in her complaint."

Doc. 22 at 1 & ¶ 6. The Court granted the motion, Doc. 25, and entered the decree, Doc. 26, reserving jurisdiction to enforce its terms, Doc. 26 at 9–10. The proposed decree stated this Court has subject-matter jurisdiction under 28 U.S.C. § 1331; the Court scratched through that statute and wrote "20 U.S.C. § 1415(e)(2)(F)(iii)" (part of the IDEA mediation provision). Doc. 26 at 2.

In the decree, the parties explain they resolved the issues "[t]o immediately address the urgent educational needs of [Ms. Johnson], to avoid costly litigation, and to settle this action fully and finally."[2] Doc. 26 at 2.

Under the decree, the school district agrees to provide the previously agreed-to services. *Compare* Doc. 1-3 at 1–2, *with* Doc. 26 at 5–6. In addition:

> a. [The school district] will provide [Ms. Johnson] four hours of home instruction each school day.

> b. For two hours each school day, [the school district] will have a teacher certified in Exceptional Student Education (ESE) go to [Ms. Johnson]'s group home and provide her one-on-one direct instruction.

> c. During a different two-hour block, [the school district] will provide [Ms. Johnson] general-education instruction via APEX, an online program. [Ms. Johnson] will be able to request assistance from general-education teachers online through APEX. Also, between the hours of 8:00 a.m. and 3:00 p.m., [Ms. Johnson] will be able to request assistance from the Flagler County Rise Up general-education teacher/administrator on the APEX curriculum. In addition, if the Rise Up general-education teacher/administrator is available during this two-hour block, the teacher/administrator will provide [Ms. Johnson] direct instruction for up to 30 minutes via Zoom or another video platform.

> d. [Ms. Johnson]'s ESE teachers will differentiate her general-education instruction for her to ensure that she can access it at her instructional level.

---

[2]The school district does not contend the finality language in the consent decree forecloses the current motion for attorney's fees and expenses. *See generally* Doc. 31.

e. [The school district] will provide [Ms. Johnson] paraprofessional support during the four hours that she is receiving home instruction, either by sending to her group home a paraprofessional who is an employee of the [school district] or by providing her a paraprofessional by contracting with her group home, East Coast Habilitation Options (ECHO).

Doc. 26 at 3–5. The decree also includes provisions requiring the submission of status reports to the Court. Doc. 26 at 7. The decree says nothing about attorney's fees, expenses, or costs. *See generally* Doc. 26.

The current motion followed. Doc. 29.

Pointing to § 1415(i)(3)(B) (the IDEA attorney's fee provision) and asserting she "brought this action under" § 1415(e)(2)(F)(iii) (the part of the IDEA mediation provision under which this Court found it has jurisdiction, *see* Doc. 26 at 2), Ms. Johnson contends she is entitled to an award of attorney's fees and "expenses." *See generally* Doc. 29. She argues she is the prevailing party in "this IDEA proceeding" because "[t]he consent decree alters the legal relationship between the parties." Doc. 29 at 2–3. She estimates her fees are $55,000 and her expenses are $1,039 and explains that although many lawyers "assisted in this matter," she is requesting fees only for Kevin Golembiewski, a lawyer with Disability Rights Florida. Doc. 29 at 3 & n.1.

The school district responds a fee award is unavailable to Ms. Johnson for three reasons: first, this lawsuit is not an action or proceeding under the IDEA; second, Ms. Johnson is not a prevailing party because she received "exactly what was offered" at the pre-litigation IEP meeting; and third, she should have brought any claim for attorney's fees as a separate claim for relief. *See generally* Doc. 31.

In a reply filed with permission, *see* Doc. 35, Ms. Johnson argues the school district "misapprehends the nature of this action," Doc. 36 at 1. Focusing only on count I (as opposed to the breach-of-contract claim in count II), she contends this lawsuit "is not an action brought under state law to enforce a settlement agreement; instead, it is an action to enforce an IDEA mediation agreement that Ms. Johnson brought under [§] 1415(e)(2)(F)." Doc. 36 at 1.

## II.   Law & Analysis

The current motion and response present four issues: first, whether the IDEA authorizes a fee award to the prevailing party in a lawsuit to enforce an agreement reached through IDEA mediation; second, whether Ms. Johnson is the prevailing party in this lawsuit; third, whether Ms. Johnson's failure to assert a separate claim for attorney's fees precludes a fee award; and fourth, whether the IDEA authorizes an award of "expenses." If the answer is "no" to either the first or second issue, that is the only issue that need be decided and, in the interest of judicial economy, should be decided.

### A.   *Does the IDEA authorize a fee award to the prevailing party in a lawsuit to enforce an agreement reached through IDEA mediation?*

"In the United States, parties are ordinarily required to bear their own attorney's fees[.]" *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001). Under this "American Rule," each litigant pays its own attorney's fees absent a statute or contract authorizing recovery. *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 370 (2019).

Ms. Johnson contends a statute, not a contract, authorizes a fee award, pointing to the IDEA fee provision in 20 U.S.C. § 1415(i)(3)(B). Doc. 29 at 1.

Analyzing her contention requires statutory interpretation of that and other provisions of § 1415. The text of § 1415 in its entirety is attached to this report and recommendation.[3]

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). "[W]hen the language at issue is a legal term of art, the phrase's 'ordinary legal meaning is to be expected[.]'" *Pinares v. United Techs. Corp.*, 973 F.3d 1254, 1260 (11th Cir. 2020).

Section 1415 is titled "Procedural safeguards" and is divided into fifteen subsections with titles generally describing their content:

(a) Establishment of procedures[4]
(b) Types of procedures[5]
(c) Notification requirements
(d) Procedural safeguards notice
(e) Mediation
(f) Impartial due process hearing[6]

---

[3]Regulations implementing § 1415 are in 34 C.F.R. §§ 300.500 to 300.537. Except as explained later, the regulations neither address the issues presented nor shed light on them.

[4]Subsection (a) provides that agencies receiving IDEA funds must "establish and maintain procedures in accordance with" § 1415 "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] by such agencies." § 1415(a).

[5]Subsection (b) details required procedures, including an opportunity for parents to examine records, participate in meetings, and obtain an independent educational evaluation of the child; written prior notice to parents when the local educational agency proposes or refuses to initiate or change services; an opportunity for mediation; and an opportunity for a person to present a complaint about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." § 1415(b).

[6]Subsection (f) provides that whenever a complaint has been received, the parents or local educational agency involved must "have an opportunity for an impartial due process hearing" that must be conducted by the state or local educational agency. § 1415(f)(1)(A). Before the hearing, the agency must convene the preliminary meeting with the parents.

(g) Appeal[7]
(h) Safeguards[8]
(i) Administrative procedures
(j) Maintenance of current educational placement
(k) Placement in alternative educational setting
(l) Rule of construction
(m) Transfer of parental rights at age of majority
(n) Electronic mail
(o) Separate complaint

§ 1415(a)–(o). Ms. Johnson and the school district participated in mediation and entered into the agreement under subsection (e). She claims attorney's fees and expenses under subsection (i).

Subsection (e), titled "Mediation," provides that any local or state educational agency receiving IDEA funds must "ensure that procedures are established and implemented to allow parties to disputes involving any matter, including matters arising prior to the filing of a complaint … to resolve such disputes through a mediation process." § 1415(e)(1). The procedures must ensure that mediation is voluntary, not used to deny or delay a parent's rights, and conducted by a qualified, impartial, trained mediator. § 1415(e)(2)(A). The state must maintain a list of qualified mediators and "bear the cost of the mediation process[.]" § 1415(e)(2)(C), (D). The mediation must occur "in a timely manner" and at a location convenient to the parties. § 1415(e)(2)(E). The

---

§ 1415(f)(1)(B)(i). If the meeting fails to resolve the complaint, a hearing timeline begins. § 1415(f)(1)(B)(ii).

[7]Subsection (g) provides that "any party aggrieved by the findings and decision rendered" through the due process hearing "may appeal such findings and decision to the State educational agency." § 1415(g)(1).

[8]Subsection (h) mandates rights to any party to a due process hearing, such as the right to be accompanied by a lawyer and child-disability specialist and "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." § 1415(h).

discussions at the mediation must be confidential and must not be used in any "due process hearing or civil proceeding." § 1415(e)(2)(G).

Most important here, subsection (e) includes this provision:

**Written agreement**

In the case that a resolution is reached to resolve the complaint through the mediation process, the parties shall execute a legally binding agreement that sets forth such resolution and that—

(i) states that all discussions that occurred during the mediation process shall be confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding;

(ii) is signed by both the parent and a representative of the agency who has the authority to bind such agency; and

(iii) *is enforceable in any State court of competent jurisdiction or in a district court of the United States.*

§ 1415(e)(2)(F) (emphasis in italics added).[9] Ms. Johnson contends she "brought this action under" the italicized clause above, § 1415(e)(2)(F)(iii). Doc. 29 at 2. As stated, in the consent decree, this Court found it has jurisdiction under that clause. *See* Doc. 26 at 2.

---

[9]Subsection (f) similarly provides the following with respect to a preliminary meeting held before a due process hearing:

In the case that a resolution is reached to resolve the complaint at a meeting described in clause (i), the parties shall execute a legally binding agreement that is—

(I) signed by both the parent and a representative of the agency who has the authority to bind such agency; and

(II) enforceable in any State court of competent jurisdiction or in a district court of the United States.

§ 1415(f)(1)(B)(iii).

Subsection (i), titled "Administrative procedures," provides that a decision made at a due process hearing is final unless appealed. § 1415(i)(1). Subsection (i) also creates a right to a civil action in court after administrative exhaustion, specifies a limitation period for bringing the civil action, establishes requirements for the court to follow in the action, includes the fee provision on which Ms. Johnson now relies, and specifies fees allowed and disallowed:

> (2) **Right to bring civil action**
>
> (A) **In general**
>
> Any party aggrieved by the findings and decision made under subsection (f) [due process hearing] or (k) [placement in alternative educational setting] who does not have the right to an appeal under subsection (g) [to a state educational agency], and any party aggrieved by the findings and decision made under this subsection [administrative procedures], shall have the right to bring a civil action with respect to the [due process] complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.
>
> (B) **Limitation**
>
> The party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows.
>
> (C) **Additional requirements**
>
> In any action brought under this paragraph, the court—
>
> > (i) shall receive the records of the administrative proceedings;
> >
> > (ii) shall hear additional evidence at the request of a party; and

(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

(3) **Jurisdiction of district courts; attorneys' fees**

(A) **In general**

The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy.

(B) **Award of attorneys' fees**

(i) **In general**

*In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs—*

(I) to a prevailing party who is the parent of a child with a disability;[10]

(II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or

---

[10]A state receiving IDEA funds "may provide that, when a child with a disability reaches the age of majority under State law (except for a child with a disability who has been determined to be incompetent under State law) … all other rights accorded to parents … transfer to the child[.]" § 1415(m)(1).

Under Florida law, "When a student with a disability reaches the age of eighteen, … the right to notice … is retained as a shared right of the parent and the student. All other rights afforded to parents … transfer to the student." Fla. Admin. Code R. 6A-6.03311(8)(a)–(b).

Here, any right to attorney's fees appears to belong to Ms. Johnson. The parties do not suggest otherwise. *See generally* Docs. 29, 31.

(III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

### (ii) Rule of construction

Nothing in this subparagraph shall be construed to affect section 327 of the District of Columbia Appropriations Act, 2005.

### (C) Determination of amount of attorneys' fees

Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection.

### (D) Prohibition of attorneys' fees and related costs for certain services

### (i) In general

Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if—

(I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

(II) the offer is not accepted within 10 days; and

(III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

(ii) **IEP Team meetings**

Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e).

(iii) **Opportunity to resolve complaints**

A meeting conducted pursuant to subsection (f)(1)(B)(i) [preliminary meeting] shall not be considered—

(I) a meeting convened as a result of an administrative hearing or judicial action; or

(II) an administrative hearing or judicial action for purposes of this paragraph.

(E) **Exception to prohibition on attorneys' fees and related costs**

Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer.

(F) **Reduction in amount of attorneys' fees**

Except as provided in subparagraph (G), whenever the court finds that—

(i) the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;

(ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;

(iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or

(iv) the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A),

the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section.

(G) **Exception to reduction in amount of attorneys' fees**

The provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section.

§ 1415(i) (emphasis in italics added).

The threshold issue presented here is whether a lawsuit to enforce an agreement reached through IDEA mediation under subsection (e) is "any action or proceeding brought under this section" required by subsection (i) for attorney's fees. *See* § 1415(i)(3)(B)(i) (quoted).

"As usual, we start with the statutory text." *See Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020) (quoted).

"Any" is all-encompassing. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219, 221 (2008) (observing "any" in "any other law enforcement officer" suggests a "broad meaning" and opining "Congress could not have chosen a more all-encompassing phrase"); *Laperriere v. Vesta Ins. Grp.*, 526 F.3d 715, 726 (11th Cir. 2008) ("[T]he term 'any' in a statute has a broad, powerful, and expansive meaning; it does not mean 'some' or 'all but a few,' but instead means 'all.'" (some internal quotation marks and quoted authority omitted)).

"Action" is both an ordinary noun and a legal term of art, and Congress used the term in both ways in § 1415; for example, an "action" by an

educational agency about which a parent may file a due process complaint, § 1415(b)(6)(B); an "action" proposed or refused by an educational agency in response to a due process complaint, § 1415(c)(1)(A), (B); a "disciplinary action" against a child in response to the child's conduct, § 1415(k)(1)(H), (5)(A), (5)(B); an "action," "civil action," or "judicial action" a party may bring in a state or federal court to review a final administrative decision, § 1415(d)(2)(K), (i)(2)(A), (i)(3)(D)(i), (i)(3)(D)(iii); a "cause of action" a party may bring as part of the lawsuit, § 1415(i)(3)(B)(i)(II); an "action" by law enforcement and judicial authorities to address a crime, § 1415(k)(6); and a "civil action" under other laws protecting rights of children with disabilities, § 1415(*l*). Considering the use of "action" in connection with attorney's fees and costs and in the subsection creating a right to bring a civil action in court, "action" in § 1415(i)(3)(B)(i) at least means a judicial action.

"Or" is "almost always disjunctive, that is, the words it connects are to be given separate meanings[.]" *Loughrin v. United States*, 573 U.S. 351, 357 (2014) (quoted authority omitted). While "statutory context can overcome the ordinary, disjunctive meaning of 'or,' … context favors the ordinary disjunctive meaning of 'or'" when the phrase in which "or" appears begins with "any" and thereby "bespeaks breadth." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018).

"[P]roceeding" ordinarily means a "legal action," "procedure," or "transaction." *See Proceeding*, Merriam-Webster, www.meriam-webster.com/dictionary/proceeding (last visited May 12, 2022). Congress used the term in several places in § 1415; for example, mediation discussions are confidential and may not be used as evidence in any later "due process hearing or civil proceeding," § 1415(e)(2)(F)(i), (e)(2)(G); a court deciding an appeal of a final

decision must receive records of the "administrative proceedings," § 1415(i)(2)(C)(i); and a child must remain in the same educational placement during the pendency of any "proceeding conducted pursuant to this section," § 1415(j). Courts have interpreted "proceeding" in § 1415(i)(3)(B)(i) to include an IDEA administrative due process hearing. *E.g.*, *Alief Indep. Sch. Dist. v. C.C. ex rel. Kenneth C.*, 655 F.3d 412, 417 (5th Cir. 2011); *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 75–76 (2d Cir. 2005); *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003); *Vultaggio ex rel. Vultaggio v. Bd. of Educ.*, 343 F.3d 598, 602 (2d Cir. 2003).

"[B]rought under" is a phrase "of common legal parlance." *Pinares*, 973 F.3d at 1260. "Simply put, a suit is brought under the law which supplies its cause of action. And a cause of action creates, enables, and allows the litigation of a claim." *Id.* "To 'bring an action' means to 'sue.'" *Id.* (quoting *Bring an Action*, Black's Law Dictionary (11th ed. 2019)). "And to sue 'under' a law is to sue pursuant to, or as authorized by, the cause of action created by that law." *Id.* "Thus, for example, the Supreme Court has explained that the 'vast majority of cases <u>brought under</u> the general federal-question jurisdiction of the federal courts are those in which federal law <u>creates the cause of action</u>.'" *Id.* (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986); emphasis in *Pinares*).

"This section" plainly means § 1415 in its entirety. The regulation implementing subsection (i) provides, "In any action or proceeding brought under *section 615* of the Act [(the section codified at § 1415)], the court, in its discretion, may award reasonable attorneys' fees as part of the costs." 34 C.F.R. § 300.517(a) (emphasis added). This interpretation is evidenced by Congress's use of particular words in § 1415 to reference broader or narrower parts of the

law: "this title" (title 20 of the United States Code ("Education")), "this chapter" (chapter 33 ("Education of Individuals with Disabilities")); "this subchapter" (subchapter II ("Assistance for Education of All Children with Disabilities")); "this section" (§ 1415); "this subsection" (a particular subsection of § 1415); "this paragraph" (a particular paragraph in § 1415); and "this subparagraph" (a particular subparagraph in § 1415). *See generally* § 1415. This interpretation is supported by the introductory paragraph of § 1415, which requires agencies receiving IDEA funds to "establish and maintain procedures in accordance with *this section* to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] by such agencies"—a clear reference to the entirety of § 1415. *See* § 1415(a) (emphasis added). Courts of appeals interpreting "this section" have ruled the words refer to § 1415 in its entirety. *See Alief Indep. Sch. Dist.*, 655 F.3d at 417; *Vultaggio*, 343 F.3d at 602; *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1028 (9th Cir. 2000).

Putting together the terms and considering the all-encompassing nature of "any," the use of "action" in connection with attorney's fees and costs, the placement of "action" in the subsection creating a right to bring a civil action in court, the use of the disjunctive "or," the common legal meaning of "brought under," and the plain meaning of "this section," the phrase "in any action or proceeding brought under this section" at least means a judicial action with a claim for relief created by § 1415. Interpreting "in any action or proceeding brought under this section" in this manner, the issue becomes whether Ms. Johnson's first claim here—to enforce the agreement reached through IDEA mediation—is a claim for relief created by § 1415.

22

"An express federal cause of action states, in so many words, that the law permits a claimant to bring a claim in federal court." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 283 (7th Cir. 2009)). "The question of the existence of a statutory cause of action is, of course, one of statutory construction." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). A court considers the statutory text to determine if it contains "rights-creating language," *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001), and examines "the statutory structure within which the provision in question is embedded," *Love v. Delta Air Lines*, 310 F.3d 1347, 1353 (11th Cir. 2002).

Considering the text of § 1415 and the statutory structure, § 1415 creates a claim to enforce an agreement reached through IDEA mediation. The text is in subsection (e) ("Mediation"), (2) ("Requirements"), (F) ("Written agreement") requiring parties who resolve a dispute through IDEA mediation to "execute a legally binding agreement," requiring the agreement to state the resolution and include confidentiality protections, requiring the parent and authorized agency representative to sign the agreement, and providing that the agreement "is enforceable in any State court of competent jurisdiction or in a district court of the United States." § 1415(e)(2)(F)(i)–(iii).

Other courts have interpreted § 1415 in the same way. *See Shaw v. Dolton Riverdale Sch. Dist. 148*, No. 19 C 1241, 2019 WL 5695825, at *4 (N.D. Ill. Nov. 4, 2019) (distinguishing a claim to enforce an agreement reached through IDEA mediation from a claim for damages for breach of contract; citing cases); *C.T. ex rel. D.T. v. Vacaville Unified Sch. Dist.*, No. CIV. S-06-197 FCD JFM, 2006 WL 2092613, at *6 (E.D. Cal. July 27, 2006) ("The plain language

23

of the statute reveals that Congress unequivocally intended § 1415(e)(2)(F)(iii) to confer jurisdiction upon federal courts and an express right of action to parties over claims arising from agreements made pursuant to § 1415(e)(2)."); *G. W. v. Ringwood Bd. of Educ.*, 28 F.4th 465, 473 & n.1 (3d Cir. 2022) (Phipps, J., dissenting) (observing in a dissent on another issue that § 1415 creates "five discrete causes of action," including a cause of action to enforce an agreement reached through IDEA mediation).

The absence of a statute of limitations in § 1415 for an action to enforce an IDEA mediation agreement is not dispositive, and the school district does not contend otherwise, *see generally* Doc. 31. Where Congress fails to provide a statute of limitations for a federal cause of action, a court "borrows" or "absorbs" the "local time limitation most analogous to the case at hand," *JSK by & through JK v. Hendry Cnty. Sch. Bd.*, 941 F.2d 1563, 1570 n.1 (11th Cir. 1991) (quoted authority omitted), which here would be a breach-of-contract claim. That Congress included in § 1415 a statute of limitations and other requirements for a civil action appealing a final administrative decision likewise is not dispositive. An action to enforce an agreement has a ready analog in a common law breach-of-contract claim; an action appealing a final administrative decision with unique procedures within the local and state educational context does not.

Thus, Ms. Johnson's lawsuit bringing a claim to enforce the agreement between her and the school district reached through IDEA mediation is an action under § 1415, allowing the Court to exercise discretion to award reasonable attorney's fees to her if she is the prevailing party. At least one purpose of the IDEA supports this conclusion: "to ensure that the rights of

children with disabilities and parents of such children are protected." *See* § 1400(d)(1)(B) (quoted).

The parties cite no case directly on point.[11] *See generally* Docs. 29, 31, 36. The undersigned found just one, and that one supports Ms. Johnson's position. In *Jacqueline N. v. School District of Philadelphia*, parents sued a school district, bringing claims under various federal laws. No. CV 19-3748, 2020 WL 529890, at *1 (E.D. Pa. Jan. 31, 2020). The parents requested a fee award as part of the relief for a claim to enforce agreements reached through IDEA mediation. *Id.* at *4. The defendants argued the claim "is a common law breach of contract claim for which counsel fees are not awarded to the prevailing party under state law." *Id.* The court rejected the argument, concluding the agreements were reached through IDEA mediation, the claim therefore is a claim under § 1415, and § 1415 thus "authorizes the award of counsel fees to prevailing parents in an action to enforce the written settlement agreements[.]" *Id.* The court added, "It would be odd indeed for Congress to authorize such an award for legal work occurring before a written settlement is signed but not to allow an award thereafter if a breach of the settlement agreement occurs." *Id.* The court continued, "It is the practical reality that … to be able to enforce the provisions of the IDEA including any settlement, parents need to be able to secure counsel fees if they prevail.

---

[11]Ms. Johnson relies on *LeJeune v. Khepera Charter School*, 420 F. Supp. 3d 331, 338 (E.D. Pa. 2019), and *Sabatini v. Corning-Painted Post Area School District*, 190 F. Supp. 2d 509, 517 (W.D.N.Y. 2001). Doc. 36 at 2 n.1. Neither case helps her position. While both cases involved breaches of agreements reached during the IDEA administrative process, at least some of the agreements included fee provisions, the defendants conceded that fees could be awarded, and the courts analyzed not whether fees could be awarded but whether the plaintiffs were the prevailing parties and whether the requested rates and hours were reasonable. *See generally LeJeune*, 420 F. Supp. 3d 331; *Sabatini*, 190 F. Supp. 2d 509.

Without the right to recover counsel fees, a parent has won only a pyrrhic victory for a disabled child." *Id.*

While conceding the agreement was reached through IDEA mediation, the school district contends a lawsuit bringing a claim to enforce that type of agreement is not an "action or proceeding" under § 1415, arguing that "[i]f attorney's fees were allowable in an action seeking to enforce a written agreement, the allowance for attorney's fees would be found" in the mediation provisions in subsection (e). Doc. 31 at 3–6. The school district cites *Prescott v. Palos Verdes Peninsula United School District*, 659 F. Supp. 921, 923 (C.D. Cal. 1987), for the proposition that "Congress intended to provide attorney's fees for work solely done at the administrative level[.]" Doc. 31 at 4. The school district's argument is unpersuasive; the argument gives no meaning or at least no plain meaning to the terms "any," "action," "or," and "this section."

The school district relies on legislative history of a former version of the IDEA fee provision as described in *Mitten by & through Mitten v. Muscogee County School District*, 877 F.2d 932, 935 (11th Cir. 1989). Doc. 31 at 4. In *Mitten*, the court considered the phrase—"any action or proceeding brought under this *subsection*"—and held "action or proceeding" "includes administrative hearings and appeals." 877 F.2d at 935 (emphasis added); *see* Handicapped Children's Protection Act of 1986, Pub. L. No. 99-372, sec. 2, § 1415(e)(4), 100 Stat. 796, 796–97 (adding the attorney's fee provision considered in *Mitten*). Rejecting an argument that because administrative hearings are brought under another subsection of the act they are excluded from "any action or proceeding under this subsection," the Eleventh Circuit pointed to legislative history of 1986 amendments, which explained that the

fee provision permits a court to award fees "in an action or proceeding (a due process hearing or a state level review)[.]" *Id.* (quoted authority omitted).

The school district relies on the legislative history as described in *Mitten* to argue that Congress intended "action or proceeding" to "apply to those administrative actions or proceedings as outlined within the statute, not actions for enforcement of settlement agreements." Doc. 31 at 4.

The school district's reliance on legislative history as described in *Mitten* is unavailing. "[L]egislative history is persuasive to some because it is thought to shed light on what legislators understood an ambiguous statutory text to mean when they voted to enact it into law." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011). But "[i]f the text is clear, it needs no repetition in the legislative history; and if the text is ambiguous, silence in the legislative history cannot lend any clarity." *Encino*, 138 S. Ct. at 1143; *see also Ex parte Collett*, 337 U.S. 55, 61 (1949) ("The plain words and meaning of a statute cannot be overcome by a legislative history which through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction." (quoted authority omitted)).

Here, the school district articulates no ambiguity warranting arguable consideration of legislative history, and none is apparent. Moreover, the legislative history on which the school district relies pertains to a former version of the IDEA fee provision narrower in scope—"this subsection"—than the current version—"this section"—and precedes Congress's addition of the mediation provision in subsection (e) by years. *See* Individuals with Disabilities Education Act Amendments of 1997, Pub. L. No. 105-17, sec. 615, § 1415(e), 111 Stat. 37, 90 (adding mediation provision); Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No 108-446, sec. 615,

§ 1415(e), 118 Stat. 2647, 2719 (amending mediation provision). How congressional intent regarding fees for a lawsuit to enforce an agreement reached through IDEA mediation could be gleaned from legislative history well preceding the addition of the mediation provision is unclear. Even if ambiguity were present and legislative history was appropriately considered, legislative history would hurt the school district's position insofar as Congress broadened the fee provision—changing "this subsection" to "this section"—in the same legislation in which Congress added the mediation subsection. *See* § 1415(i)(3)(B); 111 Stat. at 92. Or legislative history would add nothing to the extent legislative history is silent on the fee provision's application to a lawsuit to enforce an agreement reached through IDEA mediation.

The school district states the Eleventh Circuit in *Robert v. Cobb County School District*, 279 F. App'x 798, 802 (11th Cir. 2008), "noted that actions founded on breach of settlement agreement <u>are not</u> IDEA actions as they do not require any adjudication of a plaintiff's rights under the IDEA or any consideration of the text of the IDEA." Doc. 31 at 5.

*Robert* is unpublished and thus non-binding. Regardless, *Robert* offers weak support for the school district's position. There, the parties agreed the school district would provide "T.K." a functional behavior analysis. *Robert*, 279 F. App'x at 800. After the analysis, the school district determined that T.K. should return to placement at a local high school. *Id.* The plaintiffs requested a due process hearing, contending the analysis was incomplete and T.K.'s move would violate the agreement. *Id.* An administrative law judge held the school district had violated the agreement. *Id.* The plaintiffs thereafter sued for an IDEA fee award under § 1415(i)(3)(B). *Id.* The Eleventh Circuit upheld summary judgment for the school district, explaining the plaintiffs had not

obtained relief on a claim brought under the IDEA; rather, they "prevailed only on a state-law breach of contract claim that by their own admission did not involve the IDEA." *Id.* at 801–02. The Eleventh Circuit made no mention of IDEA mediation or an IDEA preliminary meeting (see footnote 9 above), suggesting the parties agreed outside of IDEA mediation or an IDEA preliminary hearing, and, in any event, the Eleventh Circuit did not analyze the issue here. *See generally id.* at 799–802. Here, unlike there, the school district concedes the parties reached the agreement through IDEA mediation. Doc. 31 at 2.

Thus, Ms. Johnson's lawsuit bringing a claim to enforce the agreement between her and the school district reached through IDEA mediation is an action brought under § 1415, allowing the Court to exercise discretion to award reasonable attorney's fees to her if she is the prevailing party in this lawsuit.

## B.    *Is Ms. Johnson the prevailing party in this lawsuit?*

"Numerous federal statutes allow courts to award attorney's fees and costs to the 'prevailing party.'" *Buckhannon*, 532 U.S. at 600. "Prevailing party" is a "legal term of art" used to describe someone "who has been awarded some relief by the court[.]" *Id.* at 603. Whether a plaintiff is the "prevailing party" is a question of law. *Church of Scientology Flag Serv., Org. v. City of Clearwater*, 2 F.3d 1509, 1513 (11th Cir. 1993).

Rule 54(a) defines "judgment" to include a "decree." Besides a judgment on the merits, a settlement agreement "enforced through a consent decree may serve as the basis for an award of attorney's fees." *Buckhannon*, 532 U.S. at 604; *see also Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (holding that to qualify as a "prevailing party," a civil-rights plaintiff "must obtain an enforceable

judgment against the defendant from whom fees are sought … or comparable relief through a consent decree").

 "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111–12. "[E]nforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604 (cleaned up); *accord Robert*, 279 F. App'x 801 (stating this principle in analyzing the § 1415 fee provision); *Jefferson Cnty. Bd. of Educ. v. Bryan M*, 706 F. App'x 510, 514 (11th Cir. 2017) (same). "Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered change in the legal relationship between the plaintiff and the defendant." *Buckhannon*, 532 U.S. at 604 (cleaned up); *see also Maher v. Gagne*, 448 U.S. 122, 124, 128–30 (1980) (holding that fees may be awarded to a civil-rights plaintiff as a "prevailing party" "after a case has been settled by the entry of a consent decree, without any determination that the plaintiff's constitutional rights have been violated").

Ms. Johnson obtained a consent decree in which the school district agreed to provide services, including more services than what it had agreed to provide in the mediation agreement she was asking the Court to enforce. *Compare* Doc. 1-3 at 1–2, *with* Doc. 26 at 3–6. The consent decree materially altered the legal relationship of the parties in that way and by requiring the school district to act under a consent decree over which the Court retains jurisdiction and requires status reports, making Ms. Johnson the prevailing party.

The school district argues Ms. Johnson is not a prevailing party because she is receiving from the school district "exactly what was offered to [her] at the IEP meeting, which occurred prior to the filing of the litigation." Doc. 31 at 7. This argument is unavailing for at least two reasons. First, the school district points to nothing in the record to establish Ms. Johnson is receiving from the school district exactly what had been offered to her at the pre-litigation IEP meeting. Second, even if she is, she received more through this litigation; that is, a consent decree over which this Court retains jurisdiction and requires status reports.[12]

The use of "may" in the fee provision in § 1415 indicates an award of attorney's fees is permissive rather than mandatory. The school district restricts its argument to whether Ms. Johnson is the prevailing party; accordingly, the undersigned does not consider whether the Court should exercise its discretion to deny a fee award regardless of whether Ms. Johnson is the prevailing party.

Thus, Ms. Johnson is the prevailing party, and without an argument that the Court should exercise discretion to deny a fee award, awarding fees is warranted.

---

[12]The school district's argument that Ms. Johnson is not a prevailing party because she is receiving from the school district exactly what was offered to her at the pre-litigation IEP meeting may be unavailing for a third reason. While § 1415 envisions no fees for work following rejection of an offer where the relief finally obtained is not more favorable, the conditions for disallowance do not appear present here, including a written offer. *See* § 1415(i)(3)(D)(i).

**C.      Does Ms. Johnson's failure to assert a separate cause of action for fees preclude a fee award?**

Interpreting a former version of § 1415, the Eleventh Circuit concluded that the fee provision creates a claim for relief distinguishable from a claim for relief appealing an administrative decision. *Zipperer by & through Zipperer v. Sch. Bd. of Seminole Cnty., Fla.*, 111 F.3d 847, 851 (11th Cir. 1997). Lower courts have explained that, to plead a claim for attorney's fees under § 1415 (for example, for work for an administrative due process hearing), a plaintiff must allege she initiated an action or proceeding under § 1415 and she was the prevailing party. *See, e.g.*, *S.C. v. Huntsville City Schs.*, 441 F. Supp. 3d 1228, 1240 (N.D. Ala. 2020).

Based on this authority, the school district argues that Ms. Johnson's "motion for attorney's fees should have been brought as a cause of action in itself." Doc. 31 at 5 n.3. The school district presents the argument in a footnote, and any relief appears for naught, making unclear whether the school district wants the Court to consider the argument.

In any event, in the complaint filed in this lawsuit, Ms. Johnson demanded "[r]easonable attorney fees and litigation costs incurred in prosecuting this action," Doc. 1 at 13, and through that demand put the school district on notice she would be seeking fees and costs incurred in prosecuting this action if she prevailed.[13] Requiring her to add a separate claim for that

---

[13]Ms. Johnson never demanded in this lawsuit fees for legal work undertaken at the administrative level, *see generally* Doc. 1 (complaint), and the undersigned does not read her current motion to request a determination on entitlement to any such fees, *see generally* Docs. 29 (motion), 36 (reply). She does not argue—and would have a hard time arguing based on the "prevailing party" jurisprudence discussed—that she "prevailed" at the IDEA mediation.

relief or file a new lawsuit for that relief would unnecessarily elevate form over substance and thus is unwarranted.

**D.    *Does the IDEA authorize an award of "expenses"?***

The IDEA fee provision says nothing about "expenses," instead stating, "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs." § 1415(i)(3)(B).

Interpreting this provision, the Supreme Court observed that the term "costs" is a term of art that generally excludes expert fees, and Congress's use of the term "strongly suggests" the provision is not "an open-ended provision that makes participating States liable for all expenses incurred by prevailing parents in connection with an IDEA case—for example, travel and lodging expenses or lost wages due to time taken off from work." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297 (2006). The Court held the language "simply adds reasonable attorney's fees incurred by prevailing parents to the list of costs that prevailing parents are otherwise entitled to recover [under] 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court, and the recovery of witness fees under § 1920 is strictly limited by [28 U.S.C.] § 1821, which authorizes travel reimbursement and a $40 per diem." *Id.*

Ms. Johnson requests a determination she is entitled to an award of reasonable attorney's fees and "expenses" under § 1415 without describing "expenses." Doc. 29. To the extent she requests a determination she is entitled to something beyond costs under § 1920, as limited by § 1821, and reasonable attorney's fees, the determination is unwarranted.

33

### III.   Recommendation

The undersigned recommends:

(1)   **granting in part and denying in part** Ms. Johnson's motion requesting a determination she is entitled to an award of reasonable attorney's fees and expenses, Doc. 29;

(2)   **determining** that Ms. Johnson is entitled to an award of reasonable attorney's fees incurred in prosecuting this action and costs under 28 U.S.C. § 1920 but not to an award of expenses outside of §§ 1821 and 1920;

(3)   **directing** the parties to confer in good faith on reasonable attorney's fees incurred in prosecuting this action and § 1920 costs and notify the Court after 30 days whether they have agreed on an amount or whether issues remain and, if issues remain, **directing** the undersigned to conduct a telephone conference to discuss the issues and ways to resolve them speedily and efficiently and, if necessary, establish a briefing schedule; and

(4)   **waiting** to enter judgment on attorney's fees and costs until after an agreement or decision on reasonable amounts.

Within 14 days after this report and recommendation is entered, either party may serve and file specific written objections to any proposed finding or recommendation. *See* Fed. R. Civ. P. 72(b)(2). A party may respond to the other party's objections within 14 days after service of the objections. *See id.* A failure to serve and file specific written objections will alter the scope of review by the district judge and the United States Court of Appeals for the Eleventh Circuit

and result in waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**Entered** in Jacksonville, Florida, on May 12, 2022.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

Attachment: 20 U.S.C. § 1415